CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 24 2014

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TYRONE A FERGUSON, JR., | ) | CASE NO. 7:14CV00107 |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| HAROLD CLARK, DIRECTOR, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Tyrone A. Ferguson, Jr., a Virginia inmate proceeding pro se, filed a pleading that he styles as a "MOTION FOR JUDGMENT," alleging that jail and prison officials were deliberately indifferent to a known risk that a particular inmate would assault plaintiff if the two inmates were assigned to the same prison facility in the Virginia Department of Corrections ("VDOC"). Because Ferguson asserts that defendants' actions violated his constitutional rights, the court construed and docketed his pleading as a civil rights action pursuant to 42 U.S.C. § 1983. Because Ferguson's pleading did not provide a sufficient statement of relevant facts, the court directed him to submit additional information concerning the dates on which specific, related events occurred. In response, Ferguson has submitted an affidavit, which the court has considered as part of his complaint. Upon review of this record, however, the court will summarily dismiss this action for failure to state a constitutional claim.

## Background

Ferguson's troubles with inmate "Velle" Parks began at the time of Ferguson's preliminary hearing in the Campbell County Circuit Court in September 2010, where Parks and Ferguson "crossed paths" in the courtroom. Parks, a ranking member of the "Bloods" street gang, tried to break away from his security escort, spat in Ferguson's face, and called him a

"Bitch." (Compl. 2.) Ferguson agreed to plead guilty and testify against Parks. The prosecutor, Paul McAndrews, assured Ferguson that "while he was remanded to the [VDOC] he would not encounter [Parks]," because the VDOC's classification system established "enemy documents of separation." (Id. at 2-3.)

After several months at the Campbell County Jail and other local jails, Ferguson was transferred on September 30, 2011, to Mecklenburg Correctional Center, where Parks was also imprisoned. Parks and other gang members threatened Ferguson's life. Ferguson told investigator Willis that he and Parks were not to be housed at the same facility. Mecklenburg officials segregated Ferguson for a month and then transferred him to Lunenburg Correctional Center without incident. At some point thereafter, VDOC authorities transferred Ferguson to Green Rock Correctional Center. He soon discovered that Parks was also at Green Rock. Ferguson immediately notified his family, who notified the warden. While Ferguson was in the chow hall one day, Parks hit him in the back of the head. Officers separated the inmates, segregated them briefly, transferred Parks, and released Ferguson to the general population. VDOC officials have assured Ferguson that a "keep separate" order was placed in both inmates' files on August 14, 2012.

In his complaint, Ferguson sues the director of the VDOC, Mecklenburg Investigator Willis, Keith Dawskins (identified as a supervising classification officer in the VDOC regional office), Campbell County Jail Classification Officer Angela Monroe, and Campbell County prosecutor Paul McAndrews.[1] Ferguson asserts claims that various defendants violated the Eighth Amendment, state laws and regulations, and/or were negligent in failing to prevent

---

[1] Although the heading of the complaint includes Jail Correctional Officer Tunes and Jail Investigator Milnor in the list of defendants, an attached amendment deletes these individuals as defendants. (ECF No. 1-1.)

2

Ferguson from being assigned to the same prison with his codefendant, Parks. Ferguson seeks monetary damages and injunctive relief.

## Discussion

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotation marks omitted). To establish a claim in this context, the prisoner must demonstrate that prison officials acted with "deliberate indifference" to a substantial risk that he would suffer serious harm from another inmate. Id. at 834. An official shows deliberate indifference if he is "aware of facts from which [he could infer] that a substantial risk of serious harm exists," draws an inference that the risk exists, and fails to respond reasonably to the risk. Id. at 837, 844. In short, prison officials who do not know of a risk, who do not know of the seriousness of the risk, or who act reasonably in response to a risk cannot be held liable for any constitutional violation. Similarly, supervisory prison officials who did not act personally to deprive plaintiff of his

3

constitutional rights normally cannot be held liable under § 1983. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir.1977) (finding that "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights [because t]he doctrine of respondeat superior has no application" under § 1983).

Ferguson's complaint fails to present facts supporting any plausible § 1983 claim that the Campbell County defendants, Angela Monroe and Paul McAndrews, acted with deliberate indifference to a known risk that Ferguson would be harmed by Parks. Even if these individuals knew that Parks had spat at Ferguson and threatened him in the courtroom, Ferguson's allegations do not show any respect in which these defendants responded unreasonably to that risk. First, Ferguson does not allege that he and Parks were, at any time, incarcerated together at the Campbell County Jail ("the jail"), where Monroe worked, or at any of the local jails where he was housed during the trial proceedings in which Mc Andrews was involved. Second, Ferguson does not state facts indicating that Monroe, as a local jail official, or McAndrews, as a prosecutor, had any duty or authority to ensure the accuracy of VDOC security classification records on Ferguson or that these individuals had any involvement at any time in assigning Ferguson to a VDOC prison where Parks was housed. For the stated reasons, the court will summarily dismiss Ferguson's claims against Monroe and McAndrews under § 1915A(b)(1), for fail to state any actionable § 1983 claim.

Ferguson's complaint also fails to state actionable claims against the VDOC defendants. VDOC Operating Procedure ("OP") 830.6 establishes "a standardized system of identifying, verifying, and documenting offender enemies and separation needs within institutions operated by" the VDOC. Under OP 830.6, a "keep separate" designation in two inmates' files should prevent them from being housed at a VDOC facility with access to each other. The fact that one

4

inmate's testimony contributed to another inmate's conviction does not require, but may support a keep separate designation for the two inmates. Prison administrators and investigators may request a keep separate designation, without consulting the inmates involved, or an inmate himself may request to have a specific offender documented as his enemy. Whether the request for a keep separate designation comes from a prison official or an offender, such a designation is issued only after extensive investigation and approval by the Institutional Classification Authority ("ICA").

Ferguson apparently intends to hold Mecklenburg Investigator Willis liable for failing to ensure that Ferguson and Parks be kept separate after the two inmates were both assigned to Mecklenburg in September 2011. Under OP 830.6, however, no one individual can make a keep separate determination, which requires ICA approval. Ferguson's submissions indicate that after he informed Willis of Parks' threats, the inmates were separated and Ferguson was transferred. Some months later, on August 14, 2012, a keep separate designation was entered in his file and Parks' file, possibly as a result of the investigation that Willis initiated in 2011. Based only on these facts, the court cannot find that Willis responded unreasonably to the risk that Parks would harm Ferguson. Therefore, the court will dismiss the claims against Willis under § 1915A(b)(1).

Finally, Ferguson's claims against the VDOC director and Dawskins must be dismissed. Ferguson does not state facts showing that either of these administrative officials had specific notice before Ferguson's transfer to Green Rock that he and Parks should be separated. Although the court directed Ferguson to provide the date on which he was transferred to Green Rock and the date on which Parks assaulted him there, Ferguson has not provided this information. Ferguson also fails to state facts indicating that the director or Dawskins had any personal involvement in assigning Ferguson or Parks to Green Rock. Ferguson is apparently

attempting to hold these defendants vicariously liable for the actions of other unnamed officials, and such claims are not actionable under § 1983. Vinnedge, 550 F.2d at 928 (requiring personal involvement for § 1983 liability).

Because the court concludes that Ferguson's allegations do not support any actionable claim under § 1983, the court declines to exercise supplemental jurisdiction over any possible claims he may have related to the events alleged in the complaint, based on officials' alleged negligence or violation of state laws or regulations. See 28 U.S.C. § 1367(c). Section 1983 was intended to protect only federal rights guaranteed by federal law and not to vindicate tort claims for which there are adequate remedies under state law. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Thus, the court will dismiss all state law claims without prejudice. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 24th day of June, 2014.

*/s/ Glen Conrad*
Chief United States District Judge